My name is Dereje Demise, I represent appellant Terence Moon in this matter. We've raised several issues on our appeal. For purpose of my argument, I would focus on three issues. The overwhelming drug-related testimony that was presented and what was a simple felon in possession of a firearm case. The other two issues I would like to address are the improper testimony by arresting police officers that was presented over the defendant's objection and the admission of the defendant's objection. related to the controlled buy that resulted in the issuance of a search warrant that had nothing to do with the actual possession of a firearm case and that information was used by the government in its cross-examination over the defendant's objection and without the disclosure of any of the materials or discovery related to the confidential informant. Regarding the drug testimony, essentially Rule 404B of the Federal Rules of Evidence makes an exception to the general prohibition against prior bad acts in cases where there is a special relevance to a particular prior bad act In this case, Mr. Moon was charged with just a possession of a firearm that was found under the mattress in a bedroom that contained a number of items that belonged to him, that identified him. There was testimony that he was the sole occupant of that bedroom. There was really no necessity whatsoever to get into extensive testimony about drug distribution. Well, defense counsel was the only defense really that was open to defense counsel. Since the firearm had been discovered in that room and since there was no question that Mr. Moon had previously been convicted of a felony, was that his possession of that gun was not knowing because it was hidden, secreted. And didn't the presence of the drugs in commercially saleable amounts and the drug paraphernalia provide the jury with a reason for that possession and make it more likely that that possession was knowing? Your Honor, I would say that I actually tried the case myself. I would say that from the outset, by way of a motion to eliminate, we raised the issue of limiting the drug testimony. And although it still was objectionable, I would say some evidence of the presence of drugs could have been presented. But then your argument shifts ground because if your real objection is to the quantity of drug evidence that the district court permitted, then it's not a Rule 404B argument because that effectively concedes that some drug evidence would have been proper. That's 404B. It's a Rule 403 argument as to whether the probative value of the additional evidence outweighed its unfairly prejudicial effect. So I would agree to some extent with that, but there are phases here. Initially, the police justified their entry because of the search warrant they obtained. And that's why we initially conceded that that entry could have been the reason for them to mention why they were there. But what they did was they got into extensive testimony about distribution, prior distribution, and expert testimony about the relationship of drugs, drug dealing, and possession of firearms, without disclosing the basis of the officer's testimony, expert testimony, without overall objection. This is going to my next argument, but the mere mention of the fact that they found drugs in the bedroom could have been introduced after a 404B analysis. However, the following testimony relative to distribution, painting Mr. Moon as a habitual drug dealer, the trial took about three days, I believe. Eighty percent of what was presented was drug testimony, and it overshadowed the charge of possession of firearm. It became about Mr. Moon's bad character as a drug dealer. Well, wasn't there a further justification? He took the stand, as I recall. Didn't he deny that he knew anything about the gun? He did deny that he knew. He testified he did not know that the gun was under the mattress. So you would have, it seems to me you would have a different argument if he had said nothing about the gun, if he had not denied it, or if he had not taken the stand. And there would have been a question, well, you know, just how much do you need, how much further probative force do you need to prove that a gun found under someone's mattress is probably his gun? But in this case, he put the, he made a bigger issue of it by denying it, and that has got to be weighed in the balance, too, has it not? However, I would suggest to the court that the decision for him to testify came after a series of court rulings over the defendant's objection. And that decision is usually made at the end by the defendant having seen what was presented. And he was placed in a position where his defense was eroded by the court's admission of irrelevant, I would say, highly prejudicial evidence that should not have been presented. He made that decision after the court permitted the government to introduce the extensive testimony relative to drug dealing. I would suggest to the court that his decision to testify should not affect the analysis of the judge's initial decision to permit the evidence. It's a counteractive step that he took when he decided to take the stand. The case that the government relies upon is the Davis case, and that's, in that case, this court specifically dealt with this same issue of introduction of drug evidence in gun cases. And what that case instructs district courts to do is to limit the amount of evidence, the scope of the evidence related to drugs in simple firearm possession charges, and the time frame of the drug evidence. And the court, in that case, allowed the girlfriend of the defendant to testify that the defendant had dealt drugs and that he also had another motive to possess a firearm. But the court limited and excluded the government's proposed evidence relative to a plan to destroy drugs and any drug dealing prior to the date of the firearm charge. Counsel, could you just give us a flavor of the nature of the government's evidence on drug quantities? I gather from what you're saying, as part of the government's case in chief, they did not limit their testimony to quantities found in the apartment, but they also presented testimony about drug transactions that took place outside the apartment. Is that correct? That's correct. So the point might be that, sure, if there are drugs in the apartment, that might provide him a motive for having a gun to protect perhaps a stash that he has in the apartment, but to the extent there was evidence of drug transactions outside the apartment, that would not provide a motive for him having a gun in the apartment. Is that your argument? That's part of the argument. They presented evidence that they saw what they believed to be a drug transaction prior to engaging, prior to stopping him outside the apartment. They presented evidence that, amorphously, in the past three months, in the past 72 hours of his arrest, he drove his car to a particular location and engaged in drug dealing. They presented evidence that he was stopped by the Boston police and he was chased and they stopped him and found a quantity of drug on his person that was, over the defense objection again, that related to a pending matter in the state court. They presented evidence relative to the controlled buy that gave rise to the search warrant, and the way they did it was the prosecutor stood up, read from the affidavit in front of the jury, describing the make of the car, and didn't you, within 72 hours, enter into a car, a Mercedes parked outside of your apartment, drove to such and such location, and engaged in a drug transaction. But Judge Lopez asked you about drug evidence presented in the government's case in chief, and now you're describing things that the prosecutor did in the cross-examination of the defendant. That didn't occur in the government's case in chief. In the government's case in chief, they did present evidence that he engaged in what they believed to be a drug transaction before they stopped him and conducted the search of the apartment. But other than that one transaction, which explained why he had been arrested and why they had gone to search the apartment, did they present evidence in their direct case of any other drug dealings by the defendant? Not that I recall. However, that interaction, that drug dealing they described, did not really give them a reason to stop and to conduct the search. They already had a search warrant for the house, and they had an arrest warrant for him, a search warrant for his person. So they didn't need to get into that. So you think it's improper in a prosecution like this to describe the circumstances under which the arrest was made? There was no such arrest for that transaction. No, no, but there was an arrest. There was an arrest. And apparently the government described, or the witnesses described, where the defendant was and what he was doing when they arrested him. It's, again, a mere possession of a firearm in the house. Whether or not the person engaged in an activity what they perceive to be a drug transaction has no relevance whatsoever. Well, they had a search warrant. It doesn't have relevance to prove that it is likely that as an habitual matter he would be carrying or have near him a gun. However, he did not carry a gun that day. No, but he had it near him in his apartment. So that his habitual reliance upon the gun, it seems to me, would be a relevant consideration. Would it not? I wouldn't necessarily say so. The police tried to say that drug dealers keep firearms. And when they were cross-examined, they said they conducted 80 to 90 search warrants in 2012 and found drugs, but only found guns in the 15 to 20 time of those search and seizure. Mark is switching grounds now to your expert. Yes. I think the relationship between guns and drug and drug dealing is something that should have been tested prior to trial, as requested by the defendant in a Daubert type of hearing. The government and the police did not present any facts or data to suggest, to support their theory that drug dealers keep firearms. And their testimony is an expert testimony that did not comport with the rules. And for all of the reasons stated in our brief, I ask the court to reverse the conviction. Thank you, counsel. Thank you. Judge Cillian, may it please the court, Mark Quinlivan on behalf of the United States. Let me begin with the answer to Judge Cillian and Judge Lopez's question about whether or not the government put on any evidence, in its case, affirmative evidence about drug dealing outside of what was found in the apartment. The answer is no. And I direct the court's attention to the very outset of Detective Ross's testimony. You can find it on page 1002 of the appendix. He was asked when they observed the defendant walking down the street, what they observed. He said, we saw him walking down the street and meeting. He stopped himself, double dashed, and then he said, and headed back to the apartment. There was no testimony about whether he had met with any individual, let alone that that was suggested or purported to be a drug deal. With respect to the controlled buys, no evidence presented in the government's case in chief about the controlled buys that were the basis for the search warrant. And the government didn't put on any rebuttal or extrinsic evidence about the controlled buys. They only came up after the defendant took the stand and testified that the heroin and cocaine found in his bedroom apartment were being used by himself and some friends, that he was using drugs regularly with those friends after his girlfriend had left him, that they were all using it down in his apartment. Sometimes when he had gone upstairs, his friends remained in the apartment. And he further testified that, in fact, he was no longer sleeping in the downstairs bedroom because he was sleeping upstairs on the couch, and one of his friends, who he identified as P, was sometimes sleeping in the downstairs bedroom. So after all of that testimony came out, the government requested a sidebar prior to its cross-examination and said that the defendant had opened the door to being questioned about the controlled buys. The district court agreed, but asked, are you going to put on any extrinsic or rebuttal evidence regarding the controlled buys? The government said it would not, and the court allowed the cross-examination. So... Counsel, isn't there something to opposing counsel's claim that, even if the government did not put on this evidence of transactions involving drugs, as he would characterize it, the expert testimony in the form of police testimony about the way in which those involved in the drug business rely on guns to protect what they're doing, the association between guns and drugs, that was all part of the government's case in chief, was it not? It was, and it was indirect. So in that sense, there was a great deal of testimony about involvement by the defendant in drugs, certainly implicitly, that's the whole reason for that testimony, was it not, that the defendant was heavily involved in the drug trade? Absolutely, Judge Lopez. And the district court correctly ruled that that was permissible testimony under Rule 404B, both to establish the defendant's motive for having the gun, particularly given that he previewed his defense in his opening by stating that there would be no testimony in the case linking him to the firearm. And then, of course, his testimony on cross was that other people were regularly in the bedroom, that he was, in fact, not sleeping there, and that the reason all of the heroin and cocaine was in the apartment was because they had pooled their money together to have a blowout party for the Super Bowl. And in the defendant's closing, the argument was, given that those friends were coming back, it's reasonable to assume one of them might have put the gun under the mattress because they were coming back the next day. So it is relevant to establish the defendant's motive for having the gun, as well as his dominion and control over the apartment bedroom issues that the defendant put squarely into play at trial. And I note as well that the district court gave a very careful limiting instruction about the purpose for which this evidence was being admitted, both when it was initially admitted, and then the court repeated that instruction in its final charge. And the instruction, I would suggest, is pretty much on all fours with what this court said in Smith helps to ensure that the jury understands the limited basis or nature for which the evidence was being admitted. And I note as well, I would dispute my friend's suggestion that the overwhelming, or 80% of the evidence in this case, constituted the drug evidence. That simply isn't correct. There were several witnesses whose testimony had nothing to do with the drug evidence. Officer Smigliani's testimony, for example, was about his involvement in the execution of the search. He's the person who then took the defendant to be booked. He's the person who was then told to add firearms charges and testified that he overheard the defendant then say, oops, I forgot about that, which the jury was entitled to infer referred to the discovery of the firearm and the ammunition. So I think that this case really is as close to being on all fours with Smith as you can get. This was a case where the defendant put his knowing possession of the firearm squarely into play. Again, he previewed that in his opening by stating that there would be no evidence in the case linking him to the firearm whatsoever. And then he voluntarily chose to take the stand and give a counter narrative about why that firearm may have been underneath the mattress of his bed. And again, the district court took pains to limit or make clear to the jury the limited basis for which that evidence was being admitted. So I would suggest the district court did not abuse its discretion in allowing that evidence to be admitted. So I get the sense that you're not prepared to concede in light of my concurrence in Valdivia at the police testimony here about the relationship between guns and drugs and the ability of the police to identify the drugs as, in fact, illegal drugs or the way in which the drugs were wrapped, that that's all inculpatory, that's all indicative of involvement in the drug trade. That's impermissible expert testimony. You're not prepared to concede that. No. I note Your Honor's concurrence, and as Your Honor noted, that this court has sometimes been not altogether sometimes clear about the line between lay and expert testimony where other circuits have. But I think that actually this is very akin to the kind of testimony that the majority in Valdivia said was permissible lay opinion testimony. Both of the officers were experienced members of the Boston Police Department, and therefore they had a rational basis for their testimony, and it was helpful to an issue before the jury, and it didn't require any scientific or technical knowledge to say that certain items. We won't debate that, but I will simply observe that if the opinion is based on experience, I mean the rules specifically provide for the proposition that an opinion based upon experience can, and not simply based on educational background or some kind of scientific expertise, that does a basis for characterizing the opinion testimony as expert testimony. Is that clear? I don't think that that's altogether clear, Judge Lopez. I think that, in fact, in Valdivia and other cases, for instance, Page, this court has used the officer's experience as a basis for explaining why he had a rational basis for the testimony at issue. And I would note as well that the district court, although it found that the testimony in this case was permissible lay opinion testimony, alternatively found that it would have been permissible expert testimony as well under this court's decisions in Hicks and Lopez-Lopez based on the officer's training. But if it's been expert testimony, it would have required some pretrial disclosure so the defense would have been aware, but, of course, none of that happened here. That's correct. But I think the basis of the defendant's objection was that this was not rooted in the absence of pretrial disclosure, but rather that these officers didn't have a sufficient basis to testify as an expert. And I note I just want to correct one thing about the officer's experience. It actually is Detective Ross, who's an 18-year veteran, and Sergeant Detective Murphy, who's a 27-year veteran. And I'll file a letter correcting those dates in the brief. But regardless, both of the officers, as the district court ruled, had the experience. Whether you want to characterize this at lay or expert, I would suggest the testimony in this case falls comfortably within what this court has allowed in analogous cases. Thanks. If the court has no further questions, I'll rest on the remaining issues on our brief. Thank you, Mr. Kluge, and we'll take the case under advisement.